8 A.3d 809 (2010)
417 N.J. Super. 96
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff-Respondent,
v.
N.D., Defendant-Appellant, and
E.W., Defendant.
In the Matter of T.W., Minor.
No. A-0553-09T2.
Superior Court of New Jersey, Appellate Division.
Submitted October 4, 2010.
Decided November 29, 2010.
*811 Yvonne Smith Segars, Public Defender, attorney for appellant (Beth Anne Hahn, Designated Counsel, on the brief).
Paula T. Dow, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Frantz Masse, Deputy Attorney General, on the brief).
Yvonne Smith Segars, Public Defender, Law Guardian, attorney for minor (Olivia B. Crisp, Assistant Deputy Public Defender, on the brief).
Before Judges RODRIGUEZ, GRALL and LEWINN.
The opinion of the court was delivered by
GRALL, J.A.D.
N.D. appeals from an order of disposition entered in an action for abuse and neglect filed by the Division of Youth and Family Services (the Division), N.J.S.A. 9:6-8.8 to -8.73 (Title 9). The Title 9 order transfers custody of T.W. from his mother N.D. to his father E.W., N.J.S.A. 9:6-8.54, for an indefinite period.
The order was entered without a fact-finding hearing, which is a prerequisite to a Title 9 disposition, N.J. Div. of Youth and Family Servs. v. G.M., 198 N.J. 382, 399-401, 968 A.2d 698 (2009). And, although N.D. consented to receipt of services pursuant to Title 30, the order was entered without a proper exercise of the Family Part's jurisdiction over custody and related matters pursuant to Title 30. N.J. Div. of Youth and Family Servs. v. A.P., 408 N.J.Super. 252, 263-65, 974 A.2d 466 (App.Div.2009), certif. denied, 201 N.J. 153, 988 A.2d 1176 (2010). Non-compliance with the statutory framework for litigating a Title 9 or Title 30 action and inadequate notice of the issues being adjudicated warrant a remand for further proceedings. See G.M., supra, 198 N.J. at 401, 402 n. 3, 968 A.2d 698.
On February 27, 2008, the Division, in an exercise of its authority under N.J.S.A. 9:6-8.29, removed T.W. from N.D.'s custody. On February 29, 2008, the Division filed a complaint and order to show cause alleging abuse or neglect by N.D. and seeking authorization to assume responsibility for T.W.'s care and supervision pursuant to Title 9 and Title 30. The judge granted the Division's request, and protracted litigation followed. The order of disposition was entered on August 12, 2009.
T.W. was born in September 1996, and the Division has been involved with this family several times, starting in 1999.[1] Over the years, the agency investigated two complaints filed by T.W.'s paternal grandmother, three filed by E.W., one filed by N.D., one filed by a neighbor and five filed by persons not described in the complaint. Most were unsubstantiated, and on the two prior occasions that the Division filed Title 9 complaints, the litigation *812 ended with T.W.'s return to N.D. The last order of dismissal prior to this litigation was entered on December 1, 2005. It directs the parents not to use the Division to settle custody disputes and to use instead a non-dissolution proceeding between them.
In February 2008, T.W.'s custody was governed by an order entered in a non-dissolution case. N.D. had custody of T.W. and E.W. had visitation on weekends and holidays.[2] T.W. was then eleven years old.
On February 19, 2008, E.W. contacted the Division to report that T.W. told him N.D. had left him home alone, that her apartment was heated only by the oven and had electricity from an extension cord that N.D. plugged into an outlet in the basement of the building. A caseworker went to the home but no one responded; accordingly, the caseworker and her supervisor spoke to T.W. at his school. T.W. told them the apartment had been without heat for about a year and the electricity was being taken illegally from a source outside the dwelling. He also said his mother leaves him alone for three to four hours when she goes to night school. The caseworker went home with T.W. to speak to N.D., but N.D. did not answer the caseworker's questions about the utilities and told her to leave.
N.D. did not admit to taking electricity or being without heat for an extended period of time. According to her, the electricity bill had been paid and the furnace was undergoing repairs that could not be completed until the repairman received a necessary part.
On that evidence, the judge placed T.W. in the care and supervision of the Division on February 29, 2008 and directed the Division to provide N.D. and E.W. supervised visitation. On March 5, 2008, the Division placed T.W. with his paternal grandmother.
At the outset, the Division's plan was to return T.W. to his mother's custody. In March 2008, the Division's "family team" met with N.D. and concluded that she had "the ability to respond to her child's needs beyond the basic." The team anticipated "no barriers" to T.W.'s return to her custody if the conditions in her home "meet[] agency's safety and adequacy standards."
A caseworker visited N.D.'s apartment on April 21, and found all utilities in working order. N.D. did not, however, have anything to document her tenancy and admitted she could "be locked out of the home at anytime."
N.D. appeared for a fact-finding hearing on July 9 on the Division's allegation of abuse or neglect, but no evidence was received because the parties had agreed to a stipulation.
N.D.'s attorney questioned her about her understanding of the stipulation and its consequences. Their colloquy was as follows:
[N.D.'s attorney]: [D]id I speak to you about entering into a stipulation under Title 30 or proceeding to the fact finding hearing?
[N.D.]: Yes.
[N.D.'s attorney]: And do you understand that today the Division is alleging that you need the continued supervision of the Division, under Title 30:4C-12, because they're . . . stating that you acknowledge that there are enough child welfare concerns to warrant the Division's involvement in the case?
[N.D.]: Yes.

*813 [N.D.'s attorney]: All right. And you understand that by doing a Title 30, there are no findings of abuse or neglect against you.
[N.D.]: Yes.
[N.D.'s attorney]: And you understand that by submitting to the jurisdiction of this [c]ourt, that the Division can continue to require you to do services, like parenting in the home, like family counseling with [T.W.], and so forth, specific services.
[N.D.]: Yes.
The judge found that "the stipulation has been entered into voluntarily and . . . there are enough child welfare concerns in this matter in order to warrant the involvement of the Division and the [c]ourt, under Title 30."
The judge entered an order reflecting that N.D. and the Division stipulated that "there are enough child welfare concerns that warrant the Division's involvement." The reference to Title 30 was omitted. And, although there was no discussion of waiver of a fact-finding hearing on the record, the order reflects that N.D. "knowingly, willingly and voluntarily agreed to give up [her] right to a Fact Finding Hearing at which the Division would have the burden of proof."
Despite the stipulation to provision of services pursuant to Title 30, the judge did not dismiss the Title 9 proceeding and continue the proceedings pursuant to Title 30. The judge, following the Division's suggestion, instead went on to "the dispositional phase of the hearing." The judge postponed her finding as to whether T.W. could be safely returned to his mother, N.J.S.A. 9:6-8.48, but continued custody with the Division and ordered services in the abuse and neglect action.
By August 2008, N.D. acquired housing that the Division deemed adequate. Investigators for the Division and the Public Defender's Office confirmed that N.D. had rented and was living in a one-family, two-bedroom home that was clean, adequately furnished, supplied with utilities in working order and without "safety or risk factors."
The record does not indicate why N.D.'s attorney did not move for return of T.W. pursuant to N.J.S.A. 9:6-8.32(b) immediately after she acquired a residence satisfactory to the Division. In any event, the Division continued to recommend services based on its "concern[] with the same facts happening or the same circumstances occurring all over again with [T.W.] being left alone and not feeling safe."
Less than two weeks after N.D.'s July 9 stipulation and entry of an order under Title 9 continuing services, the Division revised its permanency plan for T.W. from reunification with N.D. to reunification with either parent.
There was evidence that T.W. had said he felt unsafe and afraid in N.D.'s home. Dr. Margaret Doherty DeLong, a psychologist, evaluated N.D., E.W. and T.W. T.W. had told Dr. DeLong he "was afraid of his room" in N.D.'s apartment and of stepping into N.D.'s dirty shower. He also said he felt safer in his grandmother's house and did not want to live with N.D. but loved her and wanted to see her. In addition, T.W. talked about the conflict concerning his care between the adults in his life. According to T.W., his father and grandmother frequently asked him about where he wanted to live, and he said thinking about betraying one of his parents was hard for him.
Dr. DeLong found N.D. "capable of providing adequate parenting" and concluded that she did not require "parenting skills training." Nonetheless, in Dr. DeLong's opinion, N.D. did not recognize that the conditions in her initial home placed T.W. *814 at risk or that her role in the conflict about custody with E.W. and his mother was stressful for the child. For that reason, Dr. DeLong recommended family therapy for N.D. and T.W. with the goal of "healing their relationship" and "addressing any fears the child may have regarding living with his mother."
Dr. DeLong was not the only professional T.W. spoke to about feeling unsafe. In compliance with an order entered prior to the "fact-finding hearing" and after T.W. was placed with his grandmother, the Division arranged for T.W. to be counseled by Frank Hoehne. Hoehne has Master's degrees in social work, psychology and sociology and training as a "psychotherapist." He reported that T.W. did not feel safe in N.D.'s home but felt safe in his grandmother's house.
Hoehne did not meet with T.W.'s parents. Nonetheless, prior to the fact-finding hearing on July 9, 2008, Hoehne suggested individual counseling and parenting classes for N.D. and E.W. before commencement of any family therapy with T.W. That recommendation had a significant impact on subsequent orders governing services, which extended the litigation.
Following the fact-finding hearing, the judge ordered N.D. to meet with Hoehne and discuss whether individual therapy for her was appropriate. It is not clear whether N.D. failed to request a meeting or Hoehne refused to meet with her, but on August 22, 2008, the judge ordered N.D. and E.W. to attend individual counseling.
On October 9, 2008, N.D. asked the judge to reconsider her obligation to attend individual counseling. N.D. said she was not willing to follow the recommendation of someone who had not met her and noted that it would delay family therapy and the return of T.W. The judge issued an order that does not include a counseling mandate. It instead reports N.D.'s opposition and directs Hoehne to advise whether he "feels that family therapy would be appropriate (without the parents participating in individual therapy)." Hoehne's subsequent reports do not respond to the judge's inquiry. In any event, family therapy was never provided.
Hoehne consistently reported T.W.'s complaints of sadness and confusion caused by N.D.'s failure to appear for their visits and that T.W. recognized his parents had issues they had to address. Despite testimony from a caseworker confirming that T.W.'s grandmother played a role in the missed visits, Hoehne did not know whether T.W. had been told why the visits had not occurred on schedule; he only knew that T.W. did not mention it. Hoehne also reported that T.W. wanted to live with his father, and he reported that T.W. told him N.D. had said they would not have a relationship if he lived with his father.
Apparently in response to the conflicts surrounding visitation, N.D.'s failure to appear for and confirm some visits and Hoehne's reports about T.W.'s desire to live with his father, the Division recommended transfer of residential custody to E.W. The judge approved that placement on November 19, 2008, and directed the Division to provide transportation for N.D.'s visitation. Scheduling of visits was complicated by N.D.'s schedule for work and school and the location of the parents' respective homes. Additional visits were missed and cancelled, but there is no dispute that when N.D. and T.W. saw one another the visits were positive.
On January 9, 2009, the judge again considered visitation at the request of the Division. N.D. sought overnight visits on weekends, and E.W. said he had "no problem" *815 with that. The judge declined to grant that relief without input from T.W.
On January 20, 2009, the Division filed a report with the court recommending dismissal of the case from litigation, transfer of legal and physical custody of T.W. to the "non-offending parent," E.W., and allowing the parents to arrange visitation.
On February 4, 2009, the trial judge held a permanency hearing. The judge entered a permanency order that states approval of a plan for "reunification with father, who is the non-offending parent." The order also indicates that placement with E.W. is appropriate "because the child was placed with him on November 8 and wishes to remain with him." Indicating her intention to follow this court's decision in G.M., the judge scheduled "a best interest hearing requested by the mother to challenge the custody determination."
In G.M. this court held that Title 9 does not govern placement with a parent who did not have custody on the date the child was placed under the care and supervision of the Division. N.J. Div. of Youth and Family Servs. v. G.M., 398 N.J.Super. 21, 51, 939 A.2d 239 (App.Div.2008). But we held that due process requires a judge transferring custody in a Title 9 action to a parent who did not have custody when the child was removed to apply the standards applicable in private custody disputes set forth in N.J.S.A. 9:2-4. Id. at 40, 52, 939 A.2d 239.
Several months after the judge in this case decided to conduct a custody hearing in accordance with our decision in G.M., the Supreme Court disapproved our opinion and the practice we mandated. 198 N.J. at 401-05, 968 A.2d 698. The Court held that the trial judge in G.M. did not err by failing to hold a custody hearing but by failing to hold a dispositional hearing as required by Title 9. Id. at 402, 968 A.2d 698. The Court explained that the central question in a Title 9 dispositional hearing is whether the child may be safely returned to the custody of the parent from whom the child was removed. Ibid.[3]
Without the benefit of the Supreme Court's decision, the parties presented evidence relevant to T.W.'s custody. N.D. objected to Hoehne's qualifications to testify about custody, and he was qualified as an expert in counseling. Hoehne testified about his impressions of T.W. from their sessions.
N.D. asked to subpoena witnesses to establish that her home was safe when T.W. was removed and thereafter and that he should have been returned to her. She also asked to present witnesses with knowledge of the relationship between E.W. and T.W. over the years, an opportunity to obtain a custody evaluation and an opportunity to question a Division supervisor who N.D. claimed admitted that one of her visits was sabotaged.
The judge ruled that N.D. could not "retry the removal" and noted that N.D. had stipulated to child welfare concerns and the court's retention of jurisdiction. A custody evaluation was not ordered and the Division contested the relevance of the proffered testimony.
Hoehne testified that T.W. felt unsafe with his mother and was afraid that she might take him away if her visits were unsupervised. In his opinion, removal *816 from his father's home would be "devastating" for T.W.
The Division's caseworker, Sherilyn Drumgo, also testified. According to Drumgo, T.W. was doing well with his father, and his visits with his mother also went well. When asked whether she had any "concerns for the child's emotional well-being if taken from his father and placed with his mother," Drumgo said T.W. wanted to live with E.W. She did not indicate that T.W. would be unsafe in his mother's custody. At N.D.'s request, Dr. DeLong was subpoenaed, but N.D. declined to cross-examine her.
The hearing concluded on August 12, 2009. At the outset of the hearing, the attorneys and the judge believed that E.W. and N.D. had resolved the questions of custody and visitation. The attorney for the Division, however, urged the judge to proceed with the hearing. Based on his discussion with N.D. and her attorney, the Division's lawyer expected N.D. to appeal and argue that any agreement was coerced. He insisted on proceeding with the hearing to "have a transfer of custodylegal custody and end the litigation."
A recess was taken to allow N.D. to discuss the issues with her lawyer, and thereafter, N.D. opted to have the judge make the decision. The judge, recognizing the relevance of the Supreme Court's decision in G.M., turned to consider whether T.W. could safely be returned to N.D.'s custody. See G.M., supra, 198 N.J. at 402, 968 A.2d 698. The judge then addressed the factors set forth in N.J.S.A. 9:2-4, which guide a judge's resolution of a custody dispute between parents, and she concluded that it was in T.W.'s best interests to remain in the custody of his father. Like all other orders entered in this case, the order of disposition dismissing the case and awarding custody to E.W. and visitation to N.D. was entered in the Title 9 action.

I
A discussion of the errors in this litigation requires an understanding of the fundamental principles and statutory schemes governing state intervention in matters involving parents' care of their children. Parental rights are constitutionally protected but not absolute. G.M., supra, 198 N.J. at 397, 968 A.2d 698. Parents' rights "`must be balanced against the State's parens patriae responsibility to protect the welfare of children.'" Ibid. (quoting N.J. Div. of Youth and Family Servs. v. G.L., 191 N.J. 596, 605, 926 A.2d 320 (2007)). When that balancing is required, "a court must ensure that the statutory and constitutional rights of the parent or guardian are scrupulously protected." Ibid. The statutes governing the Division's role in protecting children are set forth in Title 9 and Title 30. Ibid. The statutory schemes are distinct, and the Division may proceed concurrently but separately under both. N.J. Div. of Youth and Family Servs. v. K.M., 136 N.J. 546, 550, 643 A.2d 987 (1994).
When a judge has given the Division authority and responsibility for the care and supervision of a child removed from his home pursuant to Title 9 and Title 30, N.J.S.A. 9:6-8.30 and N.J.S.A. 30:4C-12, the Division may proceed under Title 30, irrespective of a finding of abuse or neglect. N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 292-93, 914 A.2d 1265 (2007). However, when the abuse or neglect proceeding is terminated without a finding that the allegations in the complaint are substantiated, the Title 9 action should be dismissed after exercise of jurisdiction under Title 30 and orders should be entered in accordance with the standards and procedures pertaining to Title *817 30 litigation. See A.P., supra, 408 N.J.Super. at 263, 974 A.2d 466.
This case illustrates the potential for confusion on the part of all involved when concurrent proceedings under "`the parallel but not congruent tracks'" of Title 9 and Title 30 are not kept separate. Id. at 265, 974 A.2d 466 (quoting In re Guardianship of G.S., III, 137 N.J. 168, 179, 644 A.2d 1088 (1994)). N.D. did not have the adequate notice and opportunity to prepare and respond that due process requires. N.J. Div. of Youth and Family Servs. v. B.M., 413 N.J.Super. 118, 126-27, 993 A.2d 258 (App.Div.2010); see H.E.S. v. J.C.S., 175 N.J. 309, 321-22, 815 A.2d 405 (2003).

A
There were several deviations from the statutes governing Title 9 proceedings. Those deviations alone require reversal.
First, the stipulation accepted on July 9, 2008 was not an adequate substitute for a Title 9 fact-finding hearing or sufficient to permit entry of a Title 9 order of disposition. A fact-finding hearing is a critical stage in a Title 9 proceeding. G.M., supra, 198 N.J. at 401, 968 A.2d 698. It must be held prior to a dispositional hearing. N.J.S.A. 9:6-8.47. The purpose of a fact-finding hearing is "to determine whether the child is . . . abused or neglected." N.J.S.A. 9:6-8.44. The stipulation entered in this case was not an admission to either abuse or neglect. In fact, when N.D. entered the stipulation she expressly acknowledged that she was not stipulating to abuse or neglect and admitted nothing other than the existence of "enough child welfare concerns . . . to warrant the involvement of the Division and the court, under Title 30."
Second, without a finding or stipulation of abuse or neglect, the judge had no authority to enter any order of disposition under Title 9. A dispositional hearing "may commence" upon completion of the fact-finding hearing if "the required findings are made." N.J.S.A. 9:6-8.47(a). If the judge determines that abuse or neglect is not established, the Title 9 action must be dismissed. N.J.S.A. 9:6-8.50(c). In sum, an order of disposition placing a child with a person other than the parent from whose custody the child was removed may be entered pursuant to N.J.S.A. 9:6-8.51 only if there is first a finding of abuse or neglect. See N.J. Div. of Youth and Family Servs. v. D.C., 118 N.J. 388, 394, 571 A.2d 1295 (1990).
Third, even if there had been a finding of abuse or neglect, an order of disposition placing children outside the home of the parent who had custody at the time of removal could not be entered without a finding as to "whether the children may safely be returned to the custody of" that parent. G.M., supra, 198 N.J. at 402, 968 A.2d 698. While the judge considered the question of safe return, we cannot conclude that N.D. had adequate notice or opportunity to prepare and present relevant evidence.
"There can be no adequate preparation [for trial] where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice." B.M., supra, 413 N.J.Super. at 127, 993 A.2d 258 (internal quotations omitted). The order scheduling this hearing specified that custody was the issue to be adjudicated, not safe return. Moreover, the judge precluded N.D. from presenting evidence of conditions and circumstances prior to T.W.'s removal, and that determination effectively excluded evidence relevant to show that T.W. could safely be returned to N.D. While not essential to our decision, which is based on *818 legal error, we note that in determining T.W. could not safely be returned to N.D., the judge relied on N.D.'s supposed admission of neglect.[4] That misunderstanding is also reflected in the pre-hearing permanency order, which refers to E.W. as the non-offending parent. Because there was no finding or stipulation establishing neglect by N.D., there was no "offending" parent.
Fourth, the order of disposition placing T.W. with his father for an indefinite period is not authorized by Title 9. Placements authorized by Title 9 are temporary and may not extend beyond the periods specified in the statute. N.J.S.A. 9:6-8.54(b)(1); K.M., supra, 136 N.J. at 557-58, 643 A.2d 987.[5]

B
The Division urges us to affirm on the ground that the services and the ultimate order could have been entered under Title 30. There are three reasons to reject that argument.
First, this order was not entered under Title 30; it was entered in an abuse and neglect action pursuant to Title 9. The distinction is more than a technical one based on the docket number assigned. An order of disposition entered under Title 9 has consequences beyond its terms. A parent who asks a judge to modify or vacate a placement directed in an order of disposition under Title 9 must show that its continuation "does not serve the purposes of the act." N.J.S.A. 9:6-8.62. In contrast, a parent seeking modification of a custody order entered in an action against the other parent must establish a change in circumstances warranting revision of custody or parenting time in the best interests of the child as defined in N.J.S.A. 9:2-4. See Baures v. Lewis, 167 N.J. 91, 116, 770 A.2d 214 (2001).
Second, the Division may not rely on N.D.'s stipulation to Title 30 services because it was not sufficient. A judge who has "issued an order under N.J.S.A. 30:4C-12" may authorize the Division to "retain custody of the child because the child's health and welfare would be at risk if returned to the home." M.M., supra, 189 N.J. at 292-93, 914 A.2d 1265. In short, an exercise of jurisdiction under Title 30 that involves removal of a child from the home is proper when the child's health and welfare would be at risk if returned to the home.
The stipulation did not address the central question. In general, "stipulations permit parties in a civil case to agree on relevant facts, thereby narrowing the area of dispute requiring the production of evidence and promoting the efficient administration of justice." N.J. Div. of Youth and Family Servs. v. J.Y., 352 N.J.Super. 245, 265, 800 A.2d 132 (App.Div.2002). A stipulation "must be definite and certain in its terms and the consent of the parties to be bound by it must be clearly established." Ibid. To accept a stipulation to Title 30 services involving removal of the child in the absence of established abuse or neglect, "the judge must be satisfied that there is a factual basis" for finding the child would be at risk if returned to the parent. See ibid.
*819 N.D.'s vague stipulation is, in our view, inadequate. It says nothing about the existence of a risk to the child or the circumstances in need of correction. The vagueness allowed the Division to change its focus from N.D.'s housing to her attendance at visitation and the child's preference for remaining with his father. Most importantly, the vagueness prevented identification of the circumstances that N.D. was expected to correct and the scope of the Division's obligation to assist her efforts. See N.J.S.A. 30:4C-15.1(a)(2)-(3).
Third, in our view, the Division's claim that Title 30 would authorize an order placing E.W. with his father over N.D.'s objection on a showing under the standards set forth in N.J.S.A. 9:2-4 is of questionable merit. Under Title 30, placement with a relative, including a non-custodial parent, is an alternative to termination of parental rights. See N.J.S.A. 30:4C-15.3 (excusing the Division from its obligation to file a petition for termination of parental rights if "a permanency plan can be achieved without termination of parental rights"); N.J.S.A. 30:4C-15 (providing the same excuse from the Division's obligation to petition for guardianship); see N.J.S.A. 30:4C-15.1(a)(3) (requiring a court to consider alternatives to termination of parental rights). This alternative to termination should be understood to apply when termination would be warranted based on harm to the child and its threat of continuation, but is not necessary because "the child's needs for stability and attachment" are being met by a relative. See N.J. Div. of Youth and Family Servs. v. A.W., 103 N.J. 591, 609, 512 A.2d 438 (1986) (internal quotations omitted).

C
We have considered whether, by stipulating to a basis for the continued involvement of the Division and the court under Title 30, N.D. invited the erroneous entry of this order. "`The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error.'" N.J. Div. of Youth and Family Servs. v. M.C. III, 201 N.J. 328, 340, 990 A.2d 1097 (2010) (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 503, 677 A.2d 705 (1996)).
At most, N.D.'s stipulation was an agreement to continue T.W.'s custody with the Division and accept services under circumstances not amounting to abuse or neglect. It did not invite the entry of an order of disposition in a Title 9 action transferring custody for a period of indefinite duration on the assumption that she was an offending parent. In fact, when the stipulation was entered, the Division planned to return T.W. to N.D. Accordingly, the error was not invited by the stipulation or N.D.'s decision to have the judge resolve the question of custody.

D
The custody order entered must be reversed because we lack confidence in the outcome. The judge relied, at least in part, on N.D.'s stipulation to neglect. Moreover, the decision was based, in part, on an interview with the child that the parents did not have an opportunity to review and we cannot consider because it was not recorded. R. 5:8-6.

II
Because the order under review cannot be sustained, we turn to address the proceedings on remand. To avoid undue disruption for T.W., we continue the present order until modified by the trial judge.
*820 No later than December 20, 2010, the Division shall determine whether to proceed with the Title 9 litigation or dismiss the complaint. If the Division opts to proceed in accordance with Title 9, the judge must schedule a fact-finding hearing on the allegations of abuse or neglect after assuring that N.D. has adequate notice and opportunity to be heard on the initial complaint or any amendment thereto. The outcome of the fact-finding hearing will dictate whether the court dismisses the Title 9 action or conducts a dispositional hearing.
In the event the complaint is dismissed by the Division or by the judge after a fact-finding hearing, the terms of the present order governing custody and parenting time shall be incorporated as a pendente lite order in the parties' existing non-dissolution case and proceedings should be scheduled to resolve the custody issues in accordance with the Rules of Court and N.J.S.A. 9:2-4. Nothing in this decision should be construed to preclude the parents from resolving the questions of custody and parenting time by agreement. If those issues are tried, absent a finding of abuse or neglect in the Title 9 action, N.D. cannot be burdened by assumptions about her parental fitness based on the prior orders entered in this litigation.
The provisions of the order under review governing custody and parenting time are continued until modified by the trial court, and the matter is remanded for further proceedings in conformity with this decision. We do not retain jurisdiction.
NOTES
[1] The complaint erroneously refers to an investigation of a report filed in 1989.
[2] Neither party provided us with that order, but the testimony in the record about the custodial arrangement on February 27, 2008, is consistent.
[3] We acknowledge that another panel is of the view that a standard under G.M. that limits the Family Part to only considering the question of safe return is "too simplistic an approach." N.J. Div. of Youth and Family Servs. v. J.D., 417 N.J.Super. 1, 21, 8 A.3d 236, 248 (App.Div.2010). We note, however, that their view is expressed in dicta. See id. at 23-24, 8 A.3d 236, 249-50. In our view, the clear rule stated in G.M. gives effect to the statutes defining the balance of interests implicated by State involvement in parenting.
[4] The judge also relied on interviews with the child that were not recorded and made available to the parties as required by Rule 5:8-6.
[5] We note the apparent tension between paragraph (b)(1) of N.J.S.A. 9:6-8.54 providing for temporary placements and paragraph (b)(2) providing for permanency hearings. In our view, this reference to permanency should not be understood to permit the Division to effectuate a non-temporary placement in a Title 9 action. That interpretation would render the limitations specified in paragraph (b)(1) meaningless.