**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5784-14T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

B.W.,

    Defendant-Appellant,

and

A.A. and R.R.,

    Defendants.

_____

IN THE MATTER OF A.W., A.R., Ra.R.,
Re.R., and A.A., Minors.

_____

Submitted May 2, 2017 — Decided May 18, 2017

Before Judges Leone and Vernoia.

On appeal from the Superior Court of New
Jersey, Chancery Division, Family Part, Warren
County, Docket Nos. FN-21-0101-13 and FN-21-
102-13.

Joseph E. Krakora, Public Defender, attorney
for appellant (Amy Vasquez, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant B.W. (Mother),[1] the mother of five children residing in New Jersey, appeals an April 3, 2013 family court order finding she abused or neglected her four older children and an April 26, 2013 dispositional order continuing the custody, care and supervision of the four children with the New Jersey Division of Child Protection and Permanency (DCPP). She also appeals the April 26, 2013 order to the extent it dismissed DCPP's Title Nine, N.J.S.A. 9:6-8.21 to -8.73, complaint as to Mother's youngest child A.A. (Ann) and Ann's father, A.A. (Arnold), and awarded joint legal custody of Ann to Mother and Arnold, physical custody of Ann to Arnold, and required that Mother's parenting time with Ann be supervised. The court entered an order terminating the litigation on July 8, 2015. We affirm the court's April 3, 2013 fact-finding order and vacate that part of the April 26, 2013

---

[1] We employ initials and pseudonyms to protect the privacy of the parties and for ease of reference.

dispositional order concerning physical and legal custody of Ann, and requiring that Mother's parenting time with Ann be supervised.

## I.

The five children involved in this matter are: A.W. (Alice), born in 1995; A.R. (Anthony), born in 1997; Ra. R. (Ralph), born in 1998; Re. R. (Rebecca), born in 2004; and A.A. (Ann), born in 2011. Arnold is Ann's father, R.C. is Alice's father, and R.R. is the father of Anthony, Ralph and Rebecca. Neither R.C. nor R.R. participated in this litigation.

Mother, Arnold and the five children lived together in Kentucky and moved to New Jersey in June 2011, after Arnold's job was relocated. On June 30, 2012, a neighbor reported to the police that Alice had bruises and Alice said she was beaten by Mother. The Division responded and interviewed the family members at the police station.

On July 2, 2012, the Division under Title Nine filed a verified complaint for care and supervision of Ann, and a separate verified complaint for custody, care and supervision of Alice, Anthony, Ralph and Rebecca. At a hearing on July 3, 2012, the court awarded DCPP care and supervision of Ann with physical custody to Arnold, and awarded DCPP care, custody, and supervision of the other four children. The court also barred Mother from the family home.

On August 30, 2012, Arnold filed a non-dissolution complaint against Mother seeking custody of Ann, child support, and other relief (the "non-dissolution matter"). On October 19, 2012, the court entered an order in the non-dissolution matter denying Mother's request for custody and unsupervised parenting time, directing that custody and parenting time of Ann would be in accordance with the orders previously entered in the Title Nine proceedings, and permitting Mother to refile for custody and parenting time for Ann following the fact-finding proceeding in the Title Nine matters. On October 19, 2012, the court also entered a separate order consolidating the Title Nine matters.

On March 13, 2013, the Division filed an amended verified complaint in the Title Nine proceeding. The court subsequently conducted a fact-finding hearing. DCPP presented testimony from Arnold and DCPP caseworkers Shawanda Henderson and Vendetta Hines-Weekes. The law guardian for the four older children presented testimony from New Jersey State Trooper Keith DeCarolis, psychologist Dr. Anthony D'Urso, and school guidance counselor Michelle Russack. The law guardian for Ann presented testimony from Sachiko Brown, the law guardian's investigator. Mother did not present any witnesses.

The evidence showed that on June 29, 2012, Arnold and Mother picked up Alice after she spent the evening at a friend's house,

4

and drove Alice home. Alice and Mother argued in the car. Upon arriving home, Alice and Mother went into the house and began fighting. Ralph went to the car, told Arnold about the fight, and Arnold went into the home. Arnold saw Mother and Alice fighting and pulling each other's hair. Ralph and Anthony were also present. Arnold and Anthony physically separated Mother and Alice.

Arnold put his arms around Alice and started carrying her up the stairs. He instructed Anthony and Ralph to restrain Mother. However, Mother pursued Alice up the stairs and hit Alice. Arnold put Alice in an upstairs bedroom, where she ran to a closet and cowered in the corner. Mother entered the room and continued striking Alice, with Ann and Rebecca nearby. Mother struck Alice several times on the head, and Alice was unable to strike back or defend herself because Arnold held her in an attempt to move her away from Mother.

When Mother left the bedroom, Arnold observed that Alice had scratches and blood trickling from her ear. Alice and Arnold left the house and spoke in the car during a drive. When they returned home less than an hour later, Mother and the other four children were asleep.

When Arnold awoke the next morning, Alice was not home. Arnold left the home, but was called by a neighbor who asked that he return. When he arrived, the State Police and an ambulance were

present, and he saw Alice, who he said "looked like she had just finished a fight with . . . like, Mike Tyson . . . [with] bumps and bruises and swelling," and "it was really, really bad."

The State Police reported that Alice suffered a contusion on her head, bruising, an abrasion on her upper jaw and on her face, swelling, a black eye, bruising on her knee, shin, and leg. The DCPP intake worker observed Alice's injuries and said that her face was "deformed," she had a large lump on her forehead the size of a small grapefruit, four to five walnut sized lumps on her face, several lumps on her head, a black eye, a welt on her neck, rug burns around her knees, and welts on her back and torso. DCPP's pre-placement medical assessment stated that Alice had seven injuries to the head, one on her arm, and two on her leg.

Alice reported to the Division worker that she and Mother argued in the car, and when they entered the house Mother grabbed her hair and attacked her. According to Alice, Mother kicked and choked her for about ten minutes until Arnold ended Mother's initial assault.

Mother reported to the DCPP worker that she and Arnold arranged to pick up Ann at a friend's home, but had difficulty finding Alice because she provided them with false addresses. Mother stated that when they returned home, Alice attacked her and

she defended herself. Neither the State Police investigator nor the DCPP worker observed any injuries on Mother.

The law guardian for Alice, Anthony, Ralph and Rebecca presented expert testimony showing the children suffered emotional and psychological harm resulting from exposure to physical violence. D'Urso testified that Mother's acts of violence against Alice constituted physical and emotional abuse, which caused emotional and psychological harm to the child. He added that Alice also suffered harm as a result of her exposure to acts of domestic violence between Mother and a former paramour.

D'Urso explained that Anthony suffered from depression and sadness resulting from his exposure to Mother's physical abuse of Alice. D'Urso attributed Ralph's emotional disability to his exposure to maternal violence, and opined that Rebecca suffered emotional issues due to exposure to domestic violence and Mother's physical abuse of Alice.

Testimony was also presented concerning the poor performance of Alice and Anthony in school, with Anthony failing three of his classes during the prior academic year and Alice failing almost all of her classes during the previous school year. The evidence showed that Alice and Anthony maintained regular attendance at school, were respectful and courteous students, and that Mother responded to communications from Russack, the school's guidance

counselor, when Mother was contacted about the children's academic issues.

Russack testified that she recommended that Anthony be assessed to determine if he had a learning disability, but Mother initially rejected the recommendation because she was concerned Anthony would become a classified student. Russack explained that other parents had refused recommendations for assessments for similar reasons in the past. Mother later consented to the assessment following DCPP's involvement in this matter.

Russack also provided information to Mother concerning an online summer school program for Anthony because the school did not have summer school. Russack explained that Mother sought approval for an alternative and less costly online program, but Mother's suggested program was not approved by the school district. There were alternative summer programs at other schools but they charged fees and their availability was limited. In any event, the evidence showed Mother did not enroll Anthony in a summer school program.

The court found the witnesses credible and rejected as not credible Mother's contention that she acted in self-defense during the physical altercation with Alice. The court determined DCPP proved by a preponderance of the evidence that Alice was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(4) because Mother

failed to exercise a minimum degree of care in providing supervision, or by unreasonably inflicting or allowing to be inflicted harm or substantial risk thereof, including the infliction of excessive corporal punishment. In addition, the court found DCPP proved Alice was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(1) because Mother inflicted injuries upon Alice other than by accidental means that caused protracted impairment of Alice's emotional health.

The court further determined Alice and Anthony were abused or neglected children under N.J.S.A. 9:6-8.21(c)(4)(a) because Mother failed to exercise a minimum degree of care in attending to their educational needs.

The court also found Anthony, Ralph, and Rebecca were abused or neglected children under N.J.S.A. 9:6-8.21(c)(4) because Mother exposed them to "an environment with extensive violence, thereby causing emotional harm." The court did not make any finding that Ann was abused or neglected.

Following the court's entry of a fact-finding order, the court conducted a dispositional hearing and entered an order continuing DCPP's care, custody and supervision of Alice, Anthony, Ralph and Rebecca, directing Mother to cooperate with DCPP services, barring Mother from any contact with Alice, and permitting Mother supervised visitation with Anthony, Ralph and

Rebecca. The court order also dismissed the matter as to Ann and Arnold, and directed that Mother and Arnold continue to share legal custody of Ann, that physical custody of Ann remain with Arnold, and that Mother's parenting time with Ann be supervised. The court also ordered that any issues concerning any parenting time and custody issues concerning Ann be addressed in the non-dissolution proceeding.

The court subsequently entered an order terminating the litigation. This appeal followed.

On appeal, Mother makes the following arguments:

POINT I

THE [TRIAL] COURT EXCEEDED ITS AUTHORITY BY RESTRICTING [MOTHER'S] CONTACT WITH HER ONE-YEAR-OLD CHILD [ANN] THROUGHOUT THE ENTIRE CASE AND UPON DISPOSITION.

POINT II

THE TRIAL COURT'S DECISION MUST BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF ABUSE AND NEGLECT WITH REGARD TO THE MINORS [ALICE, ANTHONY, RALPH AND REBECCA].

POINT III

THE TRIAL COURT IMPROPERLY DISMISSED [ANN] FROM THE LITIGATION WITHOUT CONDUCTING A "G.M." HEARING TO WHICH [MOTHER] AND THE CHILD WERE [ENTITLED].

We first consider Mother's argument that there was insufficient evidence supporting the court's finding she abused or neglected Alice, Anthony, Ralph and Rebecca. "We have a strictly limited standard of review from the fact-findings of the Family Part judge." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010); N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 487, 505 (App. Div. 2016). A reviewing court defers to the factual findings of a family court "because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand," "it has a feel of the case that can never be realized by a review of the cold record" and it has "special jurisdiction and expertise in family court factfinding." New Jersey Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 324, 342-43 (2010).

Accordingly, we will "not disturb a family court's abuse or neglect findings as long as they are 'supported by adequate, substantial, and credible evidence in the record.'" N.T., supra, 445 N.J. Super. at 505 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)). Family court decisions will be upheld, "unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B.

Snyder Realty Inc. v. BMW of N. Am., Inc., 223 N.J. Super. 65, 69 (App. Div.), certif. denied, 117 N.J. 165 (1989)). However, no deference is owed to the trial court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm'n of Manalapan, 140 N.J. 366, 378 (1995).

We begin by noting that Mother does not challenge the court's finding that she abused or neglected Alice under N.J.S.A. 9:6-8.21(c)(4) by unreasonably inflicting harm by excessive corporal punishment, and under N.J.S.A. 9:6-8.21(c)(1) by inflicting physical injury by other than accidental means and causing protracted impairment of Alice's emotional health. Although Mother does not argue to the contrary, based on our review of the record we are satisfied there was substantial credible evidence supporting the court's determination.

The evidence showed that during the June 29, 2012 incident, Mother aggressively struck and kicked Alice during their initial altercation on the first floor of their home, pursued and struck Alice after Arnold intervened and carried Alice up the stairs, and continued to strike Alice in the bedroom where Alice had retreated. The evidence further showed Alice suffered numerous physical injuries and protracted damage to her emotional health as a result of Mother's conduct. Mother's conduct constituted abuse or

neglect, and excessive corporal punishment. See, e.g., M.C. III, supra, 201 N.J. at 334, 345 (finding abuse or neglect where a father grabbed, choked, and punched the children, disregarding the substantial probability injury would result); N.J. Div. of Youth & Family Servs. v. S.H., 439 N.J. Super. 137, 147-50 (App. Div.) (finding that a mother's use of a golf club and her teeth, causing a contusion and bite marks, was excessive corporal punishment), certif. denied, 222 N.J. 16 (2015); N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 340 (App. Div.) (finding mother's use of a belt to hit the child in the face, injuring his eye, was excessive corporal punishment), certif. denied, 192 N.J. 296 (2007).

Mother challenges the court's finding she abused or neglected Anthony, Ralph and Rebecca. Mother contends the court did nothing more than make categorical conclusions the children were abused and neglected, and there was no evidence showing they suffered any emotional harm as a result of any of her alleged conduct.

The court found Anthony, Ralph and Rebecca were abused or neglected by their exposure to Mother's June 29, 2012 physical attack on Alice, and to the prior acts of maternal violence. The court determined Mother "did nothing to protect her children from that exposure," and she therefore neglected the children under N.J.S.A. 9:6-8.21(c)(4). The court also found the children

suffered emotional harm from the exposure to Mother's violence toward Alice and to the prior acts of violence.

"Our Legislature has declared that 'children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence.'" N.T., supra, 445 N.J. Super. at 491 (quoting N.J.S.A. 2C:25-18). In Division of Youth & Family Services v. Robert M., 347 N.J. Super. 44, 67 (App. Div.), certif. denied, 174 N.J. 39 (2002), it was alleged that one of the parents' adopted children "died as a result of physical abuse tantamount to torture," and we found the trial court should have considered whether there was abuse of the other children. We explained that "[a]lthough the absence of past physical abuse to the natural children may infer their future safety, the alleged treatment of [the adopted child] could be a dangerous harbinger to one or more of the others." Id. at 68. We found that "[a] child's exposure to a parent's physical abuse of a child may well be abusive to others by instilling either fear or a tolerance to violence in intra-family relationships." Ibid.

However, permitting "a child to witness domestic violence does not equate to abuse or neglect of the child in the absence of additional proofs." I.H.C., supra, 415 N.J. Super. at 584. Where a child witnesses domestic violence "abuse or neglect can be shown where the Division presents 'credible evidence that

14

professionals in the field accept the general proposition that domestic violence in the home harms children and that harm had occurred in this family.'" N.T., supra, 445 N.J. Super. at 491 (quoting I.H.C., supra, 415 N.J. Super. at 584-85).

In I.H.C., supra, we held that abuse or neglect may be shown where a child witnesses domestic violence and there is evidence the child suffers emotional harm. 415 N.J. Super. at 584-85. We found sufficient evidence establishing abuse or neglect where DCPP presented expert testimony showing that as a result of the children's exposure to domestic violence, the children "manifest[ed] the effects of the coercive and violent relationship of their parents." Id. at 584. Cf. N.T., supra, 445 N.J. Super. at 503-04 (reversing court's determination that children exposed to domestic violence were abused or neglected because expert's report showing children suffered emotional harm was inadmissible); New Jersey Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 22 (App. Div. 2004) (finding DCPP did not prove abuse or neglect of children exposed to domestic violence because it failed to present expert testimony establishing a causal relationship between the domestic violence and the children's emotional distress), certif. denied, 182 N.J. 426 (2005).

Here, the evidence showed Anthony, Ralph, and Rebecca were exposed to acts of domestic violence and suffered emotional harm.

Anthony and Ralph were present during Mother's violent attack against Alice and attempted to intervene. Rebecca also witnessed a portion of Mother's attack on Alice, and reported previously seeing Mother punch Arnold. D'Urso's expert testimony established that each of the children suffered ongoing emotional harm as a result of their exposure to the Mother's violence.[2] We are therefore satisfied there was substantial credible evidence supporting the court's finding that Mother abused or neglected Anthony, Ralph and Rebecca by permitting their exposure to acts of violence within their home. I.H.C., supra, 415 N.J. Super. at 584-85.

---

[2] In finding Anthony, Ralph and Rebecca were abused or neglected, the court also referenced the children's exposure to acts of domestic violence committed against Mother in Kentucky and Mother's failure to protect the children from that exposure. Records from Kentucky's Child Protective Services showed that Mother had referrals dating back to 2005, during the time she resided there with Alice, Anthony, Ralph, and Rebecca. The records revealed that it was reported Mother was the victim of multiple incidents of domestic violence that the children witnessed. Although Mother does not challenge on appeal the court's findings as to the children's exposure to domestic violence in Kentucky or her responsibility for their exposure to it, we find it unnecessary to address the Kentucky reports or the court's reference to them because the psychosocial evaluations of Anthony, Ralph and Rebecca, and D'Urso's testimony, established the children suffered emotional harm based on their exposure to Mother's violent actions alone.

Mother next claims the evidence was insufficient to support the court's finding she abused or neglected Alice and Anthony by engaging in educational neglect. We agree.

We have recognized that a parent or guardian's failure to provide an education is a form of abuse and neglect under Title Nine. See, e.g., N.J. Div. of Youth & Family Servs. v. M.W., 398 N.J. Super. 266, 285-86 (App. Div.) (noting a parent harmed her children through educational neglect, among other forms of abuse, by leaving them with her cousin who locked them in a basement and deprived them of beds, food, a toilet, and the physical ability to attend school), certif. denied, 196 N.J. 347 (2008). N.J.S.A. 9:6-8.21(c)(4)(a) expressly provides that a child is abused or neglected when their "physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in supplying the child with adequate . . . education . . . though financially able to do so . . . ."

To establish a parent or guardian failed to exercise a minimum degree of care, DCPP must prove more than mere negligence. The minimum degree of care standard in N.J.S.A. 9:6-8.21(c)(4)

> denotes a lesser burden on the actor than a duty of ordinary care. If a lesser measure of care is required of an actor, then something

more than ordinary negligence is required to hold the actor liable. The most logical higher measure of neglect is found in conduct that is grossly negligent because it is willful or wanton. Therefore, we believe the phrase "minimum degree of care" refers to conduct that is grossly or wantonly negligent, but not necessarily intentional.

[G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999).]

Thus, there is a failure to exercise a minimum degree of care where a parent or guardian "is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181; N.J. Div. of Prot. & Permanency v. E.D.-O., 223 N.J. 166, 179 (2015). The determination of whether there was a failure to exercise a minimum degree of care requires a fact-sensitive analysis that accounts for the surrounding circumstances. E.D.-O., supra, 223 N.J. at 180. The inquiry

focus[es] on the harm to the child and whether that harm could have been prevented had the guardian performed some act to remedy the situation or remove the danger. When a cautionary act by the guardian would prevent a child from having his or her physical, mental or emotional condition impaired, that guardian has failed to exercise a minimum degree of care as a matter of law.

[G.S., supra, 157 N.J. at 182.]

However, to be considered abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(a), that failure must rise to the level of gross negligence. Id. at 178.

To be sure, Alice and Anthony performed badly in school. Although it might be argued that a child's poor school performance is within the control of a parent, the record here is devoid of evidence showing that the poor academic performances of Alice and Anthony were the result of Mother's gross negligence. There was no issue with the children's school attendance, and the record shows Mother was responsive to Russack's communications about the children. It was DCPP's burden to establish Mother's gross negligence, but it simply failed to present sufficient evidence showing any action Mother could have taken to prevent the children's poor academic performance.

We are not satisfied Mother's initial decision to reject the recommendation that Anthony be assessed constituted gross negligence. Russack testified other parents had similarly rejected such recommendations due to concerns over the classification of their children, and Mother later agreed to permit the assessment. We are also not satisfied Mother's failure to enroll Anthony in summer school constituted gross negligence because she actively sought out a less expensive alternative to the district's suggested online program. The evidence showed Mother engaged in an earnest

effort to find an affordable program summer school program to support Anthony's academic performance. She found an online program and sought district approval. Unfortunately, the district found the program unacceptable. There was no evidence the other summer school alternatives discussed during Russack's testimony were either available following Mother's effort to enroll Anthony in the less expensive online program, or that she was financially able to afford them. N.J.S.A. 9:6-8.21(c)(4)(a).

In sum, although academic performances of Alice and Anthony suggest parental inattention, the evidentiary record does not support the court's determination that Mother was grossly negligent in addressing their educational needs. We therefore reverse that part of the court's fact-finding order declaring that Alice and Anthony were abused or neglected based on Mother's alleged failure to supply them with adequate education. N.J.S.A. 9:6-8.21(c)(4)(a).

## IV.

We also consider Mother's argument that the court erred by failing to conduct a dispositional hearing prior to its dismissal of the Title Nine proceeding as to Ann, and its entry of an order continuing Arnold's physical custody of Ann and permitting Mother only supervised visitation with the child. Mother argues that under N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382

20

(2009), she was entitled to a dispositional hearing because Ann had been removed from her custody and placed with Arnold at the outset of the Title Nine matter, and the court continued the terms of its initial removal order when the Title Nine complaint was dismissed. DCPP and Ann's law guardian contend Mother was not entitled to a dispositional hearing under G.M. because Ann had always been in Arnold's custody, there was never a placement with a non-custodial parent, and G.M. requires a dispositional hearing only where there has been a placement with a non-custodial parent.

Although the parties' arguments concerning the requirements of G.M. focus on whether Ann was placed with a non-custodial parent at the outset of the Title Nine proceeding, it is unnecessary that we address the issue. Once the court did not make a finding that Ann was abused or neglected at the trial ending April 3, 2013, the court was required to dismiss the Title Nine complaint as to Ann, and the court lacked jurisdiction to enter any further orders regarding Ann in the Title Nine proceeding. N.J.S.A. 9:6-8.50(c); N.J. Div. of Child Prot. & Permanency v. I.S., 214 N.J. 8, 31-32 (2013), cert. denied, ___ U.S. ___, 134 S.Ct. 529, 187 L.Ed. 2d 380 (2013); N.J. Div. of Youth and Family Servs. v. T.S., 426 N.J. Super. 54, 64 (App. Div. 2012). We are therefore satisfied the court's April 26, 2013 order continuing the grant of physical custody to Arnold and requiring that Mother's parenting time be

supervised was entered when the court no longer had Title Nine jurisdiction over Ann.[3]

Moreover, we reject Mother's reliance on G.M. because it does not permit a court to "keep a Title [Nine] action open when the court determines that it does not find abuse or neglect." I.S., supra, 214 N.J. at 30. The court in G.M. retained jurisdiction to make a disposition in the Title Nine proceeding because it "inferentially concluded that its assistance was required and also made a finding of abuse or neglect." 198 N.J. at 401 (emphasis added); I.S., supra, 214 N.J. at 29. "[T]he central question in a Title [Nine] dispositional hearing is whether the child may be safely returned to the custody of the parent from whom the child was removed." N.J. Div. of Youth & Family Servs. v. N.D., 417 N.J. Super. 96, 107 (App. Div. 2010). Here, by contrast, the court did not find abuse or neglect of Ann, and thus had no authority to issue a Title Nine dispositional order regarding Ann. Accordingly,

_____

[3] We recognize that following the dismissal of a Title Nine complaint, a court may continue to exercise jurisdiction where appropriate under Title Thirty, N.J.S.A. 30:4C-12. See, e.g., T.S., supra, 426 N.J. Super. at 64 ("A dismissal of a Title 9 action . . . does not foreclose further intervention by the Division pursuant to N.J.S.A. 30:4C-12 to protect a child who, although not abused or neglected, is in need of services to ensure [his or her] health and safety."); accord I.S., supra, 214 N.J. at 32-35; N.D., supra, 417 N.J. Super. at 109. The court's April 26, 2013 order was a Title Nine "Abuse or Neglect Multipurpose Order" and was not entered under Title Thirty.

Mother was not entitled to a dispositional hearing under G.M. because there was no finding of abuse and neglect of Ann.

Because we conclude the court lacked jurisdiction to enter a dispositional order under Title Nine regarding Ann, we reverse the court's April 26, 2013 order to the extent it continued physical custody of Ann with Arnold and required that Mother's parenting time be supervised. Our reversal, however, does not resolve the parties' dispute over custody and parenting time of Ann or require a change in custody or the conditions of parenting time. As correctly determined by the court, those issues shall be resolved in the pending non-dissolution matter.

The record includes an October 19, 2012 order in the non-dissolution case denying Mother's request for physical custody and unsupervised parenting time pending the outcome of the Title Nine fact-finding hearing. Based on the record presented on appeal, and because the Title Nine proceeding has been dismissed, the October 19, 2012 non-dissolution order, which is not before us, governs the custody and parenting time of Ann. We offer no opinion concerning any custody or parenting time issues between the parties other to note that they must be resolved in the non-dissolution proceeding and, until that happens, the October 19  2012, order

governs the custody and parenting time issues.[4]  See, e.g., N.D.,
supra, 417 N.J. Super. at 114-15.

V.

Mother's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

We therefore affirm the court's April 3, 2013 order finding Mother abused or neglected Alice by excessive corporal punishment causing her injury and by non-accidental means, and abused or neglected Alice, Anthony, Ralph and Rebecca by exposing them to violence. We reverse the court's April 3, 2013 order to the extent it found Mother abused or neglected Alice and Anthony by educational neglect. We reverse the court's April 26, 2013 order to the extent it granted Arnold physical custody of Ann and required that Mother's parenting time of Ann be supervised.[5]

---

[4] We are aware the court's April 26, 2013 order directed that parenting time and custody issues concerning Ann shall be addressed in the non-dissolution proceeding. The record on appeal does not include any orders entered by the court in the non-dissolution matter subsequent to the October 12, 2012 order and we are otherwise not aware of any orders that may have been entered in that matter. In the event the court entered any custody or parenting time orders in the non-dissolution case subsequent to the October 19, 2012 order, those orders govern the custody and parenting time issues addressed.

[5] The portion of the court's April 26, 2013 order granting joint legal custody of Ann to Mother and Arnold was not appealed. Because we conclude the court lacked jurisdiction to enter that custody order, we also reverse the order's grant of legal custody as well.

Affirmed in part. Reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

As noted, however, the terms of the parties' physical and legal custody of Ann, and Mother's parenting time of the child, were addressed in the court's October 19, 2012 order in the non-dissolution matter which, if not already modified, remains in effect until modified by the court in that proceeding.

A-5784-14T2