# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0727-20
A-0728-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

O.W.[1] and G.W.,

      Defendants-Appellants.

_____

IN THE MATTER OF A.W.,
C.W., and O.W., minors.

_____

      Submitted January 3, 2022 – Decided January 25, 2022

      Before Judges Sumners and Firko.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FN-11-0098-19.

---

[1] We use initials and pseudonyms to protect the identities of the children and parties and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(11).

Joseph E. Krakora, Public Defender, attorney for appellant O.W. in A-0727-20 (Adrienne Kalosieh, Assistant Deputy Public Defender, of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant G.W. in A-0728-20 (Laura M. Kalik, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

PER CURIAM

In these consolidated appeals, defendants O.W. (mother) and G.W. (father) appeal from a January 27, 2020 Family Part order determining that G.W. abused or neglected their son A.W. (Alby) by whipping him with a belt and causing serious injuries, within the meaning of Title 9, N.J.S.A. 9:6-8.21(c)(4)(b). In addition, the judge found O.W. knew Alby was being physically abused by G.W. and failed to protect him thereby abusing or neglecting him under N.J.S.A. 9:6-8.21(c)(4)(b). The Law Guardian takes no position regarding these appeals. Having reviewed the record, we conclude that the judge's fact-finding decision was supported by sufficient credible evidence and is consistent with the applicable law. Therefore, we affirm the order as to both defendants.

I.

We discern the following facts from evidence adduced at the fact-finding hearing. Defendants are the biological parents of Alby, born in August 2013; C.W. (Christian), born in August 2014; and O.W. (Otto), born in December 2015. On February 19, 2019, the Division of Child Protection and Permanency (Division) received a referral from a reporter regarding "hear[ing] a woman screaming" and "a child's voice crying" through her daughter's bedroom wall. The reporter advised the incident occurred at defendants' residence. According to the reporter, she heard the woman say, "Why are you doing this?" The reporter heard a male voice respond, "Shut up! Shut up!" The reporter believed "it sounded as if the man was hitting the woman one moment and then hitting the child the next." In addition, the reporter "heard the child say, 'You cut me,' and the man responded, 'I cut you. I cut you. So[] what if I cut you.'"

After the reporter rang the family's doorbell and confronted the man who answered the door, she asked "if everything was ok." He responded affirmatively. However, the reporter claimed "she could hear the soft cries [and] whimpering of the child in the background" before the man shut the door. A Division caseworker interviewed defendants after visiting the reporter, the Ewing Police Department (EPD), and Lore Elementary School to collect

3

information. Defendants were not forthcoming with the Division's investigation.

On February 27, 2019, the caseworker spoke to Alby in the presence of his school counselor. The caseworker noted Alby "to be clean, healthy, and dressed appropriately for the weather" and "did not observe any signs of abuse or neglect." Alby stated, "he felt safe in his home," and "denied any discipline or physical abuse" or "knowledge that anyone in the home was cut or hurt." The Division concluded its investigation and determined the allegations of abuse or neglect were "unfounded."

Thereafter, on May 7, 2019, Alby "slapped" a fellow kindergartener "who pushed him down in school." Defendants were notified about the incident by Alby's teacher. The next day, May 8, 2019, Alby went to school and informed the school nurse, Judy Craig, "that his body was sore." Alby told Nurse Craig his father disciplined him with a belt and that "this was his normal when he was being disciplined."

Nurse Craig's examination of Alby revealed a bruise on his cheek "the size of a dime being swollen and pink"; a mark on his right shoulder "one inch by a half of an inch"; a mark on his upper-right abdomen/ribcage one inch by half of an inch; an "[u]pper back horizontal mark, four inches long by half[-]inch wide";

4

an "[u]pper midback horizontal mark, three inch[es] by half[-]inch wide"; and a "[m]idback horizontal mark, two inches long by half[-]inch by quarter[-]inch wide." She also documented that Alby had a "[t]ender right calf" based on his complaints of soreness; however, she did not observe any marks or a limp when he ambulated.

After completing her report, Nurse Craig notified the police, school principal, and the Division about her findings. She later testified the injuries concerned her because Alby's marks were "not something that you see in the normal course of a day for a five-year-old." In addition, Nurse Craig testified that Alby's statements were consistent with his injuries, and she was unaware of any injuries he might have sustained on May 7, 2019.

After receiving notice, Officer Charles Wyckoff and Sergeant Richard Tramontana of the EPD, and Detective Robert McNally of the Mercer County Prosecutor's Office (MCPO) became involved with the family. Both Officer Wyckoff and Sergeant Tramontana arrived at Alby's school on May 8, 2019, and spoke with him. They both found Alby's statements to be consistent with his injuries. Alby lifted his shirt to show the officers his back and they observed all of the same injuries Nurse Craig noted in her report. Officer Wyckoff

A-0727-20

photographed the child's injuries. Alby "also displayed a raspy voice through talking to" the officers, believing it was due to his screaming during the incident.

Defendants were summoned to the school, where they permitted Sergeant Tramontana to transport Alby to the MCPO, along with O.W. There, Detective McNally video recorded Alby, while Sergeant Tramontana observed. During the interview, Alby told Detective McNally that his father, G.W., "disciplined" him for the altercation the day before and caused the mark on his face. Alby shared with Detective McNally that G.W. hit him on his face, leg, and back with a belt and "hit his hand on [his] shoulder."

Furthermore, when asked, Alby said he learned the word "discipline" from his parents and that they used the word for "[w]hen they're beating somebody." Alby defined "discipline" to mean when G.W. "smacks somebody with a belt," and explained that "you turn away and [G.W.] slaps the body."

In addition, Alby told Detective McNally that G.W. had disciplined him and his younger brothers with a belt prior to this occurrence. Alby specifically stated that "he discipline[s] me a lot sometimes." Detective McNally also asked Alby if his mother, O.W., "ever disciplined [him] with a belt," to which Alby responded, "Yes." According to Alby, O.W. knew G.W. was disciplining him in his bedroom while she was in her bedroom the night before. He also disclosed

A-0727-20

that O.W. whipped Christian and Otto before with a belt. Additionally, Detective McNally asked Alby to point to where G.W. "disciplined" him. Alby cooperated and described the belt his father used and reported that G.W. bathed him and put him to bed after the beating concluded.

At the EPD, Detective McNally and Sergeant Tramontana video recorded their interview with G.W., who admitted to disciplining Alby the evening of May 7, 2019, because of the altercation at school. However, G.W. claimed he "disciplined in speaking to him" only and categorically denied ever physically disciplining Alby or his other children. G.W. attempted to distinguish physical abuse from discipline to Detective McNally and attributed the marks on Alby's body to his life as a five-year-old boy having brothers. G.W. admitted to bathing him but equivocated when asked if he noticed any marks on Alby while doing so. In response, G.W. asserted he did not "see any marks or bruises on [Alby's] body that [he] thought were out of the ordinary that were giving [him] cause for concern." The record shows G.W. continued to prevaricate when Detective McNally asked why Alby would tell him he "disciplined him with a belt" before his bath the night before.

Sergeant Tramontana then questioned G.W., and he denied seeing any concerning marks or injuries on Alby or causing same. Furthermore, when

A-0727-20

Sergeant Tramontana expressed his doubts that Alby lied about the incident, G.W. responded, "I'm not saying he's lying. I'm definitely not saying my son[] is lying." After the interview, Sergeant Tramontana arrested G.W. and issued a summons for cruelty and neglect of a child and unlawful possession of a weapon. The EPD processed and released G.W. that night. Division caseworker Tiana Smith and her associate informed G.W. of the safety protection plan that required him "to leave the home and have no contact until the Division's court hearing." The Division also requested "the family identify relatives or someone they trust who can supervise [O.W.]'s contact with her children."

Smith visited the family's home that night to supervise G.W.'s exit from home. While there, O.W. "confirmed that she and her husband hit their kids with a belt, but their children were never abused." O.W. also admitted "that her husband hit A[lby] with a belt for hitting a child in school, but there is no way . . . the injuries were sustained with a belt." O.W. advised Smith "that she didn't know that a belt was considered a weapon because [O.W.] was hit with a belt as a child." During the visit, Christian "mentioned several times that his father beats them with a great big belt." Smith "stressed the importance of complying with the safety protection plan, to prevent the Division from removing the children" and "[a]ll participants were in agreement."

A-0727-20

Smith and caseworker Michael Fogg returned to the home the following morning on May 9, 2019. Smith interviewed O.W. again, where she reported "having no knowledge of how A[lby] sustained the bruises on his body" and "denied observing any bruising on A[lby]'s body." O.W. "wanted [the] [case]worker to know that A[lby] has a history of bad behavior in school," such as "not focusing and lying." Once again, O.W. admitted that "she has hit her kids with an open hand or with a belt," but "she prefers to use her hand, because it's a lot of work for her to hit her children with a belt." And, O.W. informed Smith that G.W. "did hit A[lby] with a belt, but he didn't put those marks on [him]." However, O.W. reported "that she wasn't present when [G.W.] met with A[lby] in his room" because she was "downstairs with her speakers on so she didn't hear anything."

Smith also spoke with Christian and Otto. Christian reported "that his [m]ommy and [d]addy discipline them" with a belt when they do something "wrong." Smith asked Christian to retrieve the belt, but he explained that he couldn't because "the belt is locked in his parents' bedroom."

Later that morning, Smith and Fogg visited Lore Elementary School and spoke with Nakima Stewart, the school guidance counselor. Stewart advised the caseworkers that she was aware of the altercation between Alby and his

A-0727-20

classmate on May 7, 2019, and described the incident as "just a little pushing" and not a "physical dispute." She also confirmed that Alby "has had multiple behavioral concerns" such as "keeping still in class," but they were not alarming because "he's a small child . . . in [k]indergarten." In Stewart's opinion, lying was not a behavioral problem.

With Stewart's permission, the caseworkers met with Alby in her office. During their conversation, Alby shared that G.W. remained in the house. According to Alby, "his father told him 'good morning' before he" went to school that day in the presence of O.W. and Theresa Freeman, a trusted friend designated to supervise O.W.'s contact with the children per the safety protection plan. O.W. and Freeman denied G.W.'s presence, and O.W. accused Alby of "lying." As a result of G.W.'s violation of the safety protection plan, the Division conducted a Dodd removal of all three children from the home.[2]

Following the children's removal on May 9, 2019, they received a "pre-placement physical" at Capital Health Medical Center (Capital Health). With bruising still visible under his eye, Alby "told medical staff that his right leg

_____

[2] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82." N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

hurt because his father hit him with his hand on his leg. He also complained of pain on his face and back." At Capital Health, Christian "stated, 'This is what happens when my daddy disciplines us[] when we don't listen to mommy' [as] he pointed to bruises on A[lby]'s back." "The doctor . . . documented that [Alby] had several contusions across his back and pelvis area," and "ecchymosis" and confirmed the "linear marks . . . were caused by a belt." Fogg photographed Alby's injuries the doctor observed. Furthermore, Fogg noted the children "would indicate that they were often hit with a belt" at the hospital "[j]ust in talking with each other" in "random conversation."

After concluding its investigation, on May 13, 2019, the Division filed a verified complaint for custody, care and supervision of all three children under N.J.S.A. 9:6-8:21 and N.J.S.A. 30:4C-12. The Division alleged defendants "used excessive corporal punishment on the children." On May 15, 2019, the Division was awarded temporary custody of all three children. The Family Part conducted a fact-finding hearing over a period of seven nonsequential days. The judge heard fact testimony from Smith, Fogg, Nurse Craig, Sergeant Tramontana, and Officer Wyckoff. Dr. Gladibel Medina, Leisa Walker, and Dr. Kimberly A. Stolow were called as expert witnesses. Defendants testified on

their own behalf and called Detective McNally, Bishop Bruce Harvey, and Freeman as fact witnesses. The Law Guardian did not call any witnesses.

At the conclusion of the hearing on January 27, 2020, in an oral decision, the judge found, by a preponderance of the credible evidence, that G.W. and O.W. abused and neglected Alby in violation of N.J.S.A. 9:6-8.21(c)(4)(b). The judge determined G.W. "unreasonably inflicted harm to his child, and that harm included the infliction of excessive corporal punishment because, based upon the totality of the circumstances, it was a part of a discipline or the infliction of corporal punishment[,] which was excessive."

Further, the judge added O.W. did not inflict harm in this instance, but, "she, too, engaged to a much lesser degree both with frequency and severity of utilizing excessive corporal punishment. However, that she allowed for that to continue in their house, both parents did" participate in the infliction of corporal punishment, and whether they believed it was improper or excessive was not a defense. The judge highlighted the fact this was not an isolated incident because corporal punishment was used "periodically" according to the children, and he emphasized that the nature of Alby's injuries makes it "absolutely not believable" another kindergartener inflicted them.

12

However, the judge found the Division did not meet its burden of proof as to abuse and neglect under N.J.S.A. 9:6-8.21(c)(1) and (2) because the medical testimony and evidence were insufficient. A memorializing order was entered that day. G.W., O.W., and their children were reunified under the Division's plan on March 5, 2020, but the case remained open to ensure no new instances of corporal punishment occurred. On September 29, 2020, an order terminating the litigation was entered.

On appeal, O.W. and G.W. challenge the sufficiency of the evidence supporting the judge's findings. O.W. argues: (1) photographs of Alby's bruises were held by the court not to prove impairment under N.J.S.A. 9:6-8.21(c)(1) and (c)(2), therefore, defendants were not responsible for impairment under N.J.S.A. 9:6-8.21(c)(4) as a matter of law; and (2) the court erred by holding defendants liable under Title 9 rather than declare the family in need of services pursuant to Title 30 based on the Division's expert witnesses who recommended education as a precautionary measure.

G.W. argues: (1) the Division failed to prove by a preponderance of the evidence that his discipline of Alby was excessive or constituted a failure to exercise a minimum degree of care warranting reversal; and (2) the court erred

in failing to dismiss the Title 9 action and continuing the matter under Title 30. For the reasons that follow, we disagree and affirm.

II.

Our review of a trial court's finding of abuse or neglect is guided by well-established principles. "[W]e accord substantial deference and defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Perm. v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014)). "Indeed, we recognize that '[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding.'" N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (first alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 226-227 (2010) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We owe no deference to the trial court's legal

conclusions, which we review de novo. N.J. Div. of Youth & Fam. Servs. v. A.B., 231 N.J. 354, 369 (2017).

"The Division bears the burden of proof at a fact-finding hearing and must prove present or future harm to a child by a preponderance of the evidence." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 22 (2013) (citing N.J.S.A. 9:6-8.46(b)). The Division must sustain that burden "through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). In making a determination of abuse and neglect, the trial court should base its decision on the totality of the circumstances. N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011). In light of the standards, we find no basis to disturb the judge's findings of fact, and those findings support his legal conclusion.

As defined in Title 9, "abuse or neglect" may occur when a child's "physical, mental, or emotional condition has been impaired . . . as the result of" a parent who fails "to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment." N.J.S.A. 9:6-8.21(c)(4)(b). A parent or

15

guardian may fail to exercise the minimum degree of care if "he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 181 (1999) (citation omitted). The Division must prove its allegations by a preponderance of the evidence at a fact-finding hearing. N.J.S.A. 9:6-8.46(b)(1).

Parental rights include the right to take reasonable measures in disciplining a child, including corporal punishment. N.J. Div. of Youth & Fam. Servs. v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010) (quoting State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002)). "A determination of abuse must be shown by a preponderance of the evidence during a fact-finding hearing." Ibid.

"[P]revious statements made by the child relating to any allegations of abuse or neglect" are admissible, and not considered hearsay, as long as they are not the sole basis for the court's finding of abuse or neglect. N.J.S.A. 9:6-8.46(a)(4); see also N.J. Div. of Child Prot. & Perm. v. S.K., 456 N.J. Super. 245, 272 (App. Div. 2018). Proof of any injuries sustained by the child that are "of such a nature as would ordinarily not . . . exist except by reason of the acts or omissions of the parent or guardian" is prima facie evidence of abuse or

A-0727-20

neglect. N.J.S.A. 9:6-8.46(a)(2). However, "[a] child's statement need only be corroborated by '[s]ome direct or circumstantial evidence beyond the child's statement itself.'" N.J. Div. of Child. Prot. & Perm. v. A.D., 455 N.J. Super. 144, 157 (App. Div. 2018) (second alteration in original) (quoting N.B., 452 N.J. Super. at 522).

"'Excessive corporal punishment' is not defined by statute but is determined on a case-by-case basis." N.J. Div. of Youth & Fam. Servs. v. S.H., 439 N.J. Super. 137, 145 (App. Div. 2015) (citing K.A., 413 N.J. Super. at 511). In K.A., we noted "excessive corporal punishment" should be read in light of the term's common usage and understood meaning. Id. at 511. While the boundaries of what constitutes "excessive corporal punishment" are undefined in the statute, we have placed particular weight on the statute's inclusion of the word "excessive" and have stated that "[t]he term 'excessive' means going beyond what is proper or reasonable." Ibid. Thus, while "moderate correction" may be reasonable, "a single incident of violence against a child may be sufficient to constitute excessive corporal punishment." Id. at 510-11.

Excessive corporal punishment may occur when "the child suffers a fracture of a limb, or a serious laceration, or any other event where medical intervention proves to be necessary . . . provided that the parent or caregiver

17

could have foreseen, under all of the attendant circumstances, that such harm could result from the punishment inflicted." Id. at 511 (citation omitted). The Administrative Code provides further guidance, listing injuries that may constitute abuse or neglect, including "[c]uts, bruises, abrasions, welts or oral injuries." N.J.A.C. 3A:10-2.2(a)(9).

In K.A., we concluded that the defendant mother, who punched her eight-year-old autistic child approximately four to five times in the shoulder after the child failed to follow directions, had not inflicted excessive corporal punishment. Id. at 506, 512. We particularly noted that the defendant's actions were isolated and occurred during "the trying circumstances which [the defendant] was undergoing due to [the child]'s psychological disorder." Id. at 512. Finally, the defendant showed remorse and took responsibility for her actions. Ibid. We also emphasized that

> [the defendant] was alone, without support from either her spouse/co-parent or from other members of her extended family, such as an experienced mother or aunt. Out of sheer frustration, or through an ill-advised impulse, she struck her child five times. These blows, though undoubtedly painful, did not cause the child any permanent harm, did not require medical intervention of any kind, and were not part of a pattern of abuse.
>
> [Ibid.]

18

We reject defendants' claim that the physical contact between G.W. and Alby was no more than reasonable discipline imposed because the record shows the injuries Alby sustained were "quite extensive." Moreover, Dr. Medina noted Alby's resulting bruises and injuries were "indicative of an excessive amount of force used in the disciplining act." We defer to the judge's credibility determinations and factual findings, which are amply supported by the record as a while. This was not an isolated incident, and the judge found defendants had struck their children with a belt before. We have previously stated that striking a child with a belt constitutes abuse, especially where marks and welts are left. See N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 340 (App. Div. 2007) (finding lashing of a six-year-old child with a belt and leaving welts was abuse).

The evidence here shows there was an extended pattern of abuse, as corroborated by the statements made by Alby, O.W., and Christian. The judge rejected G.W.'s claim that he did not use a belt or similar device relative to the incident in question because it was inconsistent with all of the other compelling evidence presented. We are unpersuaded by G.W.'s argument, and we will not interfere with the judge's finding of abuse and neglect. See, e.g., A.D., 455 N.J. Super. at 164 (affirming trial court's finding of abuse and neglect).

19

Furthermore, the judge categorically rejected the contention that O.W. was unaware of G.W.'s whipping of Alby on May 7, 2019, and prior occasions. O.W.'s complacency contributed to Alby's injures and demonstrated a pattern of permission. The record supports the conclusion that O.W. allowed excessive corporal punishment in the home because she told Smith she and her husband whip the children with a belt, and the children's statements indicate this was a routine occurrence. And, O.W. testified that she had headphones on while G.W. disciplined Alby in his room on May 7, 2019, but she could have heard someone screaming. G.W. testified that the door was open, and Alby was crying, which caused his raspy voice. Here, the totality of the circumstances supports the judge's conclusion that O.W. allowed, and did not prevent, excessive corporal punishment in the home.

## III.

O.W. and G.W. also assert the record lacks evidence establishing their conduct impaired Alby's physical, mental, or emotional condition, or placed his condition in imminent danger of impairment under N.J.S.A. 9:6-8.21(c)(4)(b). If a child's parents' conduct "causes actual harm to the physical, mental, or emotion condition of a . . . child, a finding of abuse or neglect is appropriate." A.L., 213 N.J. at 8. Parents' failure to exercise a minimum degree of care by

unreasonably using excessive corporal punishment supports a finding that their child's physical, mental, or emotional condition was in imminent danger of becoming impaired. N.J. Div. of Youth & Fam. Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010).

We have "held that the phrase 'minimum degree of care' refers to conduct that is 'grossly or wantonly negligent, but not necessarily intentional.'" Ibid. (quoting G.S., 157 N.J. Super. at 178). "[I]n child abuse and neglect cases the elements of proof are synergistically related. Each proven act of neglect has some effect on the [child]. One act may be 'substantial' or the sum of many acts may be 'substantial.'" Ibid. (second alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. C.M., 181 N.J. Super. 190, 201 (J. & D.R. Ct. 1981)).

In C.H., we held "there is absolutely nothing reasonable about inflicting harm, in the form of paddling, upon a five-year-old child because the child told a neighbor that their home was without electricity." Ibid. Moreover, we have maintained the parent's "admitted use of corporal punishment regularly, including the pinching of [the child] when she was three years old as a form of punishment and her belief that no one could tell her how to discipline her own child" established an "unreasonable infliction of corporal punishment." Ibid. Because the parent failed to exercise a minimum degree of care, the child's

physical, mental or emotional condition was found to be in imminent danger of becoming impaired as a result. Ibid.

Here, the judge rejected defendants' contention that Alby's physical injuries were merely superficial. Alby's physical injuries were clearly documented by way of photographs and corroborated by his statements. And, Dr. Medina explained the physical trauma Alby's body endured to produce his bruises leads to the risk of emotional harm associated with escalating corporal punishment. The judge's decision was based upon substantial credible evidence in the record.

We also find unpersuasive G.W.'s claim that the judge failed to consider "mitigating factors"—the incident was aberrational and isolated; he was amenable to services; and his cultural and religious beliefs. G.W.'s version of events is belied by the record, which supports the conclusion this incident was not aberrational or isolated. Furthermore, G.W. was not amenable to services until after the children were removed. He was uncooperative during his interview with Detective McNally and Sergeant Tramontana; failed to comply with the safety protection plan; did not take responsibility for his actions; denied disciplining Alby with a belt; and repeatedly blamed a kindergartener for his son's injuries.

22                                                    A-0727-20

The judge underscored when G.W. "was first confronted, he was more concerned about whether it's illegal to use a belt as opposed to offering some explanation of truth[,] which might shed light on how [Alby] sustained [his] injuries." Disparate cultural and religious beliefs do not relieve a parent from his or her duty to exercise a minimum degree of care with their child. Children of all backgrounds and religions "are entitled to the same protections under Title [9]." S.H., 439 N.J. Super. at 149-50. Therefore, the judge correctly found the Division met its burden of proof under N.J.S.A. 9:6-8.21(c)(4)(b).

IV.

Finally, for the first time on appeal defendants assert the judge erroneously adjudicated the matter under Title 9 as opposed to Title 30. Thus, our review is under the plain error standard. R. 2:10-2. "New Jersey's scheme for the protection of children against abuse or neglect is codified in Title [9] of the New Jersey Statutes." N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 108-09 (2011). In Title 9 proceedings, "[t]he safety of children served shall be of paramount concern." Id. at 109 (alteration in original) (quoting M.C. III, 201 N.J. at 343). Title 30 governs guardianship and parental termination actions, using the best interest of the child test as the guiding principle. Id. at 111. "Although an abuse or neglect proceeding under Title [9] may lead to a

23

guardianship/termination of parental rights proceeding under Title [30]," only Title 9 governs abuse and neglect hearings by the Division.  Id. at 111-12; N.J.S.A. 9:6-8.44.  "The statutory schemes are distinct, and the Division may proceed concurrently but separately under both."  N.J. Div. of Youth & Fam. Servs. v. N.D., 417 N.J. Super. 96, 109 (App. Div. 2010).

> When a judge has given the Division authority and responsibility for the care and supervision of a child removed from his home pursuant to Title 9 and Title 30, the Division may proceed under Title 30 irrespective of a finding of abuse or neglect.  However, when the abuse or neglect proceeding is terminated without a finding that the allegations in the complaint are substantiated, the Title 9 action should be dismissed after exercise of jurisdiction under Title 30 . . . .
>
> [Ibid. (citations omitted).]

Thus, "[t]he outcome of the fact-finding hearing will dictate whether the court dismisses the Title 9 action or conducts a dispositional hearing."  Id. at 115.

Defendants' argument on this point is unavailing.  The judge correctly found the Division met its burden of proof under N.J.S.A. 9:6-8.21(c)(4)(b), substantiating claims of abuse or neglect set forth in the complaint in the Title 9 proceeding.  Therefore, we conclude the judge did not err in adjudicating the action under Title 9.

24

To the extent we have not already addressed them, any additional arguments defendants raise on appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25